# In the United States Court of Federal Claims

<table>
<tr><td>

JOHN DOE,

              Plaintiff,

              v.

THE UNITED STATES,

              Defendant.

</td></tr>
</table>

No. 19-cv-720 C

Filed Under Seal: April 15, 2021

Publication: April 30, 2021[1]

*Thomas Scott Tufts*, Orlando, Florida for Plaintiff.

*Joseph Alan Pixley*, United States Department of Justice, Civil Division, Washington, D.C. for Defendant.  With him on the briefs are *Joseph H. Hunt*, Assistant Attorney General, Civil Division; *Robert E. Kirschman, Jr.*, Director, Commercial Litigation; *James P. Connor*, Assistant Director, Commercial Litigation, Washington D.C.

## MEMORANDUM AND ORDER

This case arises out of Plaintiff's status as a former confidential informant for the Internal Revenue Service (IRS or Government).  Plaintiff[2] alleges that the IRS breached a ▇ implied-in-fact contract (Count I) and a ▇ written agreement (Count II), under which the IRS allegedly promised to pay him an award in the amount of a certain percentage of taxes recovered from

---

[1] This Memorandum and Order was filed under seal in accordance with the Protective Order entered in this case on April 15, 2021.  (ECF No. 36.)  Pursuant to that Memorandum and Order, the parties were instructed to propose redactions in accordance with this Court's Protective Order. *See id*. at 20 (citing ECF No. 14).  On April 29, 2021, Plaintiff filed a status report notifying the Court of its proposed redactions.  *See* ECF No. 38.  Defendant notified the Court that it did not have any proposed redactions.  *See* ECF No. 37.  The Court has incorporated Plaintiff's proposed redactions into the Court's public version of its Memorandum and Order where appropriate.  *See* ECF No. 38-1.  This public version also corrects a typographical error.

[2] Plaintiff proceeds anonymously in this case as John Doe.  *See* ECF No. 12.  He is referenced throughout this Memorandum and Order as "Plaintiff" or "Mr. Doe."

targeted individuals, based upon information Mr. Doe provided as a confidential informant and whistleblower.  Compl. ¶¶ 124-37 (Count I), ¶¶ 138-49 (Count II) (ECF No. 1).  Mr. Doe also alleges that the Government breached covenants of good faith and fair dealing under these contracts.  *See* Compl. ¶¶ 150-79 (Count III).  Mr. Doe seeks damages "in the amount of at least $██████, and [additional relief] in an amount to be determined."  *See* Compl. at 43.[3]

Defendant timely moved to dismiss this action pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (Rules or RCFC).  *See generally* Motion to Dismiss (ECF No. 17) (Def. Mot.); Reply to Response to Motion to Dismiss (ECF No. 27) (Def. Reply).  In its Motion, Defendant argues that: (1) this Court lacks jurisdiction to consider Mr. Doe's implied-in-fact contract claims, and (2) the ████ written agreement did not obligate Defendant to make any future award to Mr. Doe.  *See* Def. Mot. at 14-17 (no jurisdiction to hear implied contract claim), at 18-22 (failure to state a claim for future payment under express contract); Def. Reply at 2-10 (no jurisdiction to hear implied-in-fact contract claim), at 10-15 (failure to state a claim for future payment under express contract).  Concomitantly, Defendant argues that Plaintiff's claim for breach of the implied covenant of good faith and fair dealing must also fail if there is no valid contract covering future awards.  *See* Def. Mot. at 22-23; Def. Reply at 8-9.

For the reasons discussed below, Defendant's Motion to Dismiss is **GRANTED in part** and **DENIED in part**.

---

[3] Specifically, Plaintiff alleges he is entitled to "15% of the identified post-decision proceeds, or $██████ [], plus the amount of payroll taxes obtained by way of the [Combined Annual Wage Reconciliation or (CAWR)] program developed as a result of Plaintiff's work."  Plaintiff's Response to the Motion to Dismiss (ECF No. 24) (Pl. Resp.) at 12.

BACKGROUND

From ████ until ████, Mr. Doe served as a confidential informant for the IRS in a criminal

payroll and corporate income tax evasion investigation of his then-employer. *See* Compl. ¶¶ 4, 8,

46. Mr. Doe alleges that in ██████, certain unnamed IRS agents "promised" or informed Mr.

Doe that he would receive 15 percent of taxes collected relating to information he provided to the

IRS about his then-employer as a whistleblower or confidential informant. *Id*. ¶¶ 36-38, 41. In

███████, and again in ███████, Mr. Doe completed an IRS Form 211 to formalize his

whistleblower claim.[4] *Id*. ¶¶ 19, 51. Plaintiff remained employed with the same employer,

allegedly at the IRS's behest, until ████. *Id*. ¶ 65. By letter dated ████████, the IRS

deactivated Mr. Doe as a confidential informant. *Id*. ¶ 75.

The IRS ultimately launched a formal investigation of Mr. Doe's employer. In ████,

several of the target principals reached plea agreements with the Government stemming from the

tax evasion investigation. Compl. ¶ 79. As a result of this ████ action, the IRS allegedly collected

approximately $█ million in taxes from one of the principals and has allegedly continued to pursue

the collection of taxes due from the target taxpayers. *Id*. ¶¶ 82, 89.

In ███████, Mr. Doe contacted the IRS Whistleblower Office to request that the IRS

pay him an award for the work he performed as a confidential informant. Compl. ¶¶ 91-92. On

████████, the Whistleblower Office sent Mr. Doe a document entitled "Preliminary

Award Recommendation Under Section 7623(a)" (PARL). Def. Mot. Ex. A (unredacted, complete

---

[4] IRS Form 211 is a standard form that an informant may complete after supplying information about alleged violations of the tax laws. *See Capelouto v. United States*, 99 Fed. Cl. 682, 690 (2011).

copy of the Preliminary Award Recommendation Under Section 7623(a)).[5]  The letter states in

pertinent part:

> The Whistleblower Office has reached a preliminary award recommendation under
> Internal Revenue Code 7623(a) based on your Form 211, Application for Award
> for Original Information dated ████████████.  Enclosed is a Summary Report
> that explains our preliminary award recommendation in the amount of $██████.
> This amount is a preliminary recommendation because the determination of tax is
> not final and is subject to change.  If there are any changes to the recommended
> award percentage or the amount of collected proceeds as reflected in the Summary
> Report, then the Whistleblower Office will send you a revised Preliminary Award
> Recommendation Letter.
>
> . . . .
>
> As of the date of this preliminary award recommendation, there is the possibility
> the IRS will collect post-decision proceeds . . . .  If post-decision proceeds are
> collected, the IRS will pay consistent with this preliminary award recommendation
> and the attached Summary Report.
>
> . . . .
>
> If you agree with this preliminary award recommendation:
>
> 1.  Check the appropriate box, sign and date the enclosed Response to Summary Report
>     form indicating your agreement; and
> 2.  Return the signed form to us.
>
> By checking the box that you agree with the preliminary award recommendation,
> you agree to waive any judicial appeal rights with respect to the award
> determination, including filing a petition with the U.S. Tax Court.  As noted above,
> there is not yet a final determination of tax.  Your agreement and waiver of appeal
> rights shall only be binding to the extent that payment is made consistent with this
> preliminary award recommendation and the applicable Budget Act reduction for
> the year in which the payment will be made.

Compl. ¶ 114; Def. Mot. Ex. A at 2-3.[6]

---

[5] Mr. Doe did not attach a complete copy of the Preliminary Award Recommendation Letter to his
complaint.  Nevertheless, in deciding whether to dismiss a complaint under RCFC 12(b)(6), the
Court may consider the undisputed contract documents that are contained in, or cited in, the
pleadings without converting the motion to one for summary judgment.  *See Bristol Bay Area
Health Corp. v. United States*, 110 Fed. Cl. 251, 261-62 (2013) (citing, *inter alia*, *Tellabs, Inc. v.
Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

[6] When citing to Exhibit A of Defendant's Motion, the page numbers reference the CM/ECF page

The PARL also included a "Summary Report," which included the following relevant provisions:

6. Expected Final Determination of Tax date: ██████

7. Post-decision proceeds:

   a. Additional amounts, such as tax attributes, that may be collected post decision based on information provided by the Whistleblower: $██████

   b. Award percentage to be applied to post-decision proceeds (if any): 15%

*See* Compl. ¶ 115; Def. Mot. Ex. A at 5.

On ██████, Mr. Doe executed the response to the PARL and returned a signed "Response to Summary Report," which included the following relevant language:

I agree with the preliminary award recommendation and accept it as an award decision. To the extent payment is received by the undersigned consistent with this preliminary award recommendation, I waive all my administrative and judicial appeal rights with respect to the award decision, including my right to petition the United States Tax Court.

*See* Compl. ¶ 116; Def. Mot. Ex. A at 9. On ██████, the United States Treasury issued a check to Mr. Doe in the amount of $██████.  *See* Compl. ¶ 118.[7]

On ██████, pursuant to a court order (the ██████ judgment), Defendant sold property against which the IRS had previously placed liens due to information Plaintiff had provided as a confidential informant.  Compl. ¶ 120.  Specifically, Defendant sold property belonging to those taxpayers that Plaintiff had identified (i.e., principals associated with Plaintiff's former employer).  *Id*. ¶ 121.  With regard to one property sold, Defendant collected "over

---

numbers located on the header of each page.

[7] The amount paid reflects a tax withholding of $██████ from the preliminary award amount of $██████, as indicated in paragraph 5 of the Summary Report.  *See* Def. Mot. Ex. A at 5.

$██████ of so-called post-decision proceeds [which were] to be applied to judgments [Defendant] had obtained of over $██ million as a result of Plaintiff's work as a confidential informant and source." *Id.*

Following the ████████ judgment, Plaintiff allegedly attempted to contact the Director of the IRS Whistleblower Office to inquire about his award of 15 percent of the post-decision proceeds. *Id.* ¶ 122. According to Plaintiff, the IRS responded that Plaintiff would receive no further payment. *See id.* ¶ 123. This action followed.

<u>APPLICABLE LEGAL STANDARD</u>

Pursuant to Rules 12(b)(1) and 12(h)(3), this Court must dismiss claims that do not fall within its subject matter jurisdiction. When considering a motion to dismiss based upon lack of subject matter jurisdiction, this Court accepts as true all uncontroverted factual allegations made by the non-movant and draws all reasonable inferences in the light most favorable to that party. *See Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014); *Pixton v. B&B Plastics, Inc.*, 291 F.3d 1324, 1326 (Fed. Cir. 2002). If a motion to dismiss for lack of subject-matter jurisdiction challenges the truth of the jurisdictional facts alleged, the Court may consider relevant evidence outside the complaint in resolving the dispute. *Banks v. United States*, 741 F.3d 1268, 1277 (Fed. Cir. 2014) (quoting *Reynolds v. Army & Airforce Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988)).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff also must establish "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 556 U.S. at 678. Thus, "[a] pleading that offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 555, 557).

<u>DISCUSSION</u>

The United States Court of Federal Claims is a court of limited jurisdiction. Through enactment of the Tucker Act, which acts as a waiver of sovereign immunity, Congress has placed within this Court's jurisdiction "any claim against the United States founded either upon the Constitution, or any act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1); *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983). The Tucker Act is a jurisdictional statute and does not create any enforceable right against the United States on its own. *See Mitchell*, 463 U.S. at 216; *United States v. Testan*, 424 U.S. 392, 398 (1976); *Todd v. United States*, 386 F.3d 1091, 1093-94 (Fed. Cir. 2004). In order to fall within the Tucker Act's waiver of sovereign immunity, a plaintiff's claim for money damages against the United States must be based upon an express or implied contract with the United States, or a money-mandating constitutional provision, statute, or regulation. *See* 28 U.S.C. § 1491(a); *Mitchell*, 463 U.S. at 216-18.

Section 7623(a) of the Internal Revenue Code provides that the Secretary of the Treasury, under "regulations prescribed by the Secretary, is authorized to pay such sums, as he deems necessary for (1) detecting underpayments of tax . . . ." 26 U.S.C. § 7623 (Supp. V 2000).[8] Treasury Regulations provide that "the Whistleblower Office may pay an award under section

---

[8] This version of Section 7623 was in effect between 1997 and 2006. In subsequent versions of Section 7623, the language referenced above was placed in subsection (a) but remained unchanged.

7623(a), in a suitable amount, for information necessary for detecting underpayments of tax or detecting and bringing to trial and punishment persons guilty of violating the internal revenue laws or conniving at the same."  26 C.F.R. § 301.7623–1(a) (2020).[9]

Section 7623(a) and its implementing regulations at 26 C.F.R. § 301.7623-1, *et seq*., are discretionary and not money-mandating.  *See Cambridge v. United States*, 558 F.3d 1331, 1333 (Fed. Cir. 2009) (quoting *Merrick v. United States*, 846 F.2d 725, 726 (Fed. Cir. 1988)). Consequently, a whistleblower cannot pursue an award claim relying solely upon the statute and implementing regulations.  *Merrick v. United States*, 846 F.2d 725, 726 (Fed. Cir. 1988) ("The United States cannot be contractually bound merely by invoking the cited statute and regulation." (citation omitted)).  Instead, "[a]n enforceable contract will arise under these authorities only after the informant and the government negotiate and fix a specific amount as the reward."  *Id.* (citations omitted).

Where a plaintiff alleges that he contracted with the Government, the plaintiff need only make "a non-frivolous allegation of a contract with the government."  *Mendez v. United States*, 121 Fed. Cl. 370, 378 (2015) (internal quotations omitted) (quoting *Engage Learning, Inc. v. Salazar*, 660 F.3d 1349, 1353 (Fed. Cir. 2011)).

Plaintiff alleges that two separate contracts with the IRS entitle him to relief: (1) ▮▮▮▮ implied-in-fact contract and (2) the PARL.  *See* Compl. ¶¶ 125-26, 139-40.  He claims that Defendant has violated the express terms of the parties' agreement(s) as well as the implied duty of good faith and fair dealing.  *Id.* ¶¶ 137, 146-49, 179.

---

[9] The current versions of 26 C.F.R. §§ 301.7623-1 through 301.7623-4 apply to "claims for award under sections 7623(a) and 7623(b) that are open as of August 12, 2014."  *See* 26 C.F.R. §§ 301.7623-1(f); 301.7623-2(f); 301.7623-3(f); 301.7623-4(e).  The post-decision proceeds at issue here all relate to awards that are "open" after that date; therefore, the current versions of these regulations apply to this action.

As discussed further below, this Court holds that the ███ implied-in-fact agreement and the PARL relate to the same subject matter; therefore, the alleged implied-in-fact contract is preempted.  The Court also holds that the plain language of the PARL is sufficiently definite to constitute a non-frivolous allegation to entitle Plaintiff to a percentage of post-decision proceeds, if the IRS collects or collected the proceeds after the parties signed the PARL.  Finally, this Court holds that Plaintiff has made a non-frivolous allegation of a breach of good faith and fair dealing to the extent his claim relates to proceeds collected after execution of the PARL.

I.      Breach of the ███ Implied-in-Fact Contract

Plaintiff alleges that an implied-in-fact agreement exists between the parties that awards Plaintiff 15 percent of all proceeds the Government collected attributable to the information Plaintiff supplied.  *See* Compl. ¶¶ 125-26.  Specifically, Plaintiff alleges that: (1) IRS agents induced Plaintiff to stay with his employer with a promise of a reward, (2) the IRS benefitted from Plaintiff's information, which was instrumental to the IRS's investigation concerning Plaintiff's employer's tax evasion, and (3) Plaintiff's agreement with IRS agents was ratified by the IRS District Director and ultimately the IRS Whistleblower Office.  *See* Compl. ¶¶ 3-7.  Defendant contends that no implied-in-fact agreement exists because the PARL covers the same subject matter as the alleged implied-in-fact agreement; accordingly, Defendant contends that the Court should dismiss Plaintiff's implied-in-fact contract claims.  *See* Def. Mot. at 14-15; Def. Reply at 2-8.

"An agreement implied in fact is founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Hercules, Inc. v. United States*, 516 U.S. 417, 424 (1996) (internal quotations and citations omitted).  "[T]he existence of an

express contract precludes the existence of an implied-in-fact contract dealing with the same subject, unless the implied contract is entirely unrelated to the express contract." *Schism v. United States*, 316 F.3d 1259, 1278 (Fed. Cir. 2002) (en banc) (citing *Atlas Corp. v. United States*, 895 F.2d 745, 754-55 (Fed. Cir. 1990)); *see also Rick's Mushroom Service, Inc. v. United States*, 521 F.3d 1338, 1344 (Fed. Cir. 2008).

Here, the alleged ███ implied-in-fact agreement and the ███ express agreement (i.e., the PARL) are undoubtably related.  Mr. Doe contends an implied-in-fact contract exists pursuant to which the IRS promised to pay him 15 percent of any amount collected resulting from information he provided via his signed Form 211.  Pl. Resp. at 7.  Similarly, the PARL states that Mr. Doe's award of 15 percent is "based on [Mr. Doe's] Form 211, Application for Award for Original Information dated ████████." Def. Mot. Ex. A at 2.  In other words, both the ███ promise and the PARL offer the same award for the same information.[10]

Accordingly, as a matter of law, the existence of the alleged ███ implied-in-fact contract is precluded by the ███ express contract (the PARL).[11]  *See Atlas Corp. v. United States*, 895 F.2d 745, 754-55 (Fed. Cir. 1990) ("The existence of an express contract precludes the existence of an implied contract dealing with the same subject, unless the implied contract is entirely unrelated to the express contract." (citation omitted)).

---

[10] *Compare* Compl. ¶125 (seeking "damages in an amount to be determined, equal to the stated 15% of the actual amount of taxes shown to have been collected as a result of Plaintiff's information and Plaintiff's works as a confidential informant and source[]" for the alleged breach of the implied-in-fact contract) *with* ¶ 139 (seeking "damages in an amount to be determined, equal to the stated 15% of the actual amount of taxes shown to have been collected as a result of Plaintiff's information and work as a confidential informant and source commencing in ███ []" for the alleged breach of the express contract).

[11] Plaintiff also argues that the IRS ratified the alleged implied-in-fact agreement through subsequent acts.  Pl. Resp. at 23.  Because the Court finds that the implied and express contracts are related, it need not address this issue.

II.     Breach of the PARL

Next, both parties agree that the PARL operates as an enforceable contract.  *See* Compl. ¶ 6; Def. Mot. at 18.  However, the parties disagree on whether the PARL is sufficiently definite to obligate the IRS to pay Plaintiff a percentage of the proceeds which have been or will be collected after the parties entered into that agreement.

Contracts are interpreted "in terms of the parties' intent, as revealed by language and circumstance."  *United States v. Winstar Corp*., 518 U.S. 839, 911 (1996) (Breyer, J., concurring) (citations omitted).  Generally, this process begins and ends with the language of the contract.  *See C. Sanchez and Son, Inc. v. United States*, 6 F.3d 1539, 1543 (Fed. Cir.1993) ("A contract is read in accordance with its express terms and the plain meaning thereof."); *TEG-Paradigm Environmental, Inc. v. United States*, 465 F.3d 1329, 1338 (Fed. Cir. 2006); *Foley Co. v. United States,* 11 F.3d 1032, 1034 (Fed. Cir. 1993).  "The contract must be construed to effectuate its spirit and purpose giving reasonable meaning to all parts of the contract."  *Hercules, Inc. v. United States*, 292 F.3d 1378, 1381 (Fed. Cir. 2002) (citing *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991)); *see also NVT Technologies, Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004) ("An interpretation that gives meaning to all parts of the contract is to be preferred over one that leaves a portion of the contract useless, inexplicable, void, or superfluous." (citation omitted)).

In analyzing the plain language of the PARL in its entirety, the contract supports a non-frivolous allegation that the parties agreed to a fixed and specific amount as the reward.  *See Cambridge*, 558 F.3d at 1333 ("[A]n enforceable contract will arise under these [statutory and regulatory] authorities only after the informant and the government negotiate and fix a specific amount as the reward." (quoting *Merrick*, 846 F.2d at 726)).  Specifically, the PARL states, "[i]f

post-decision proceeds are collected, the IRS *will* pay consistent with this preliminary award recommendation and the attached Summary Report." Def. Mot. Ex. A at 3 (emphasis added). "[P]ost-decision proceeds" refers to money collected after the execution of the PARL. *Id.* at 5 ("Post-decision proceeds: . . . Additional amounts, such as tax attributes, that may be collected post-decision based on information provided by [Plaintiff] . . . ."). The term "will," as used in the PARL, is non-discretionary. The IRS Whistleblower Office's "Summary Report" attached to the PARL included a following disclosure: "Award percentage to be applied to post decision proceeds (if any): 15 %." Def. Mot. Ex. A at 5, ¶ 7b. When the Summary Report and the PARL are read in conjunction, the contract is clear. If post-decision proceeds are collected, it is evident that Mr. Doe is entitled to 15 percent of those proceeds. Though this promise is conditional upon collection, the percentage of any recovery owed to Mr. Doe is a fixed and specific amount.

This language is similar to the terms at issue in *Merrick v. United States*, 846 F.2d 725 (Fed. Cir. 1988). In *Merrick*, the plaintiff relied on IRS Publication No. 733 (July 1980) which stated, "Merrick would obtain for each investor 10% of the first $75,000 recovered, 5% of the next $25,000 recovered, and 1% of the any additional recovery with the total reward for each investor not to exceed $50,000." *Merrick*, 846 F.2d at 725-26. On these facts, the United States Court of Appeals for the Federal Circuit (Federal Circuit) found that Merrick had sufficiently pleaded that "the IRS fixed the amount of the reward." *Id*. at 726. Like the contract language at issue in *Merrick*, the PARL specifies a percentage of proceeds to be awarded resulting from sums collected attributable to information Plaintiff provided as an informant.

The Defendant points to the Federal Circuit's decision in *Cambridge* to argue that the PARL is unenforceable as to future awards because it did not "fix a specific amount" of a reward. Def. Mot. at 20 (citing *Cambridge v. United States*, 558 F.3d 1331 (Fed. Cir. 2009)). Mr. Doe's

action, however, is distinguishable.  In *Cambridge*, the Federal Circuit determined that the open-ended language in Form 733 (Rev. 1–89) did not create a right to a future reward for payment. *Cambridge*, 558 F.3d at 1335.  That version of the Form 733 stated:

> The District Director will determine whether a reward will be paid and its amount. In making this decision, the information you provided will be evaluated in relation to the facts developed by the resulting investigation. Claims for reward will be paid in proportion to the value of the information you furnished voluntarily and on your own initiative with respect to taxes, fines, and penalties (but not interest) we collect.

*Cambridge v. United States*, No. 07-142T, 2007 WL 1888888, at *2 (Fed. Cl. May 29, 2007), *aff'd*, 558 F.3d 1331 (Fed. Cir. 2009).  Unlike the open-ended language at issue in *Cambridge*, the non-discretionary statement that "the IRS *will* pay" Plaintiff 15 percent of post-decision proceeds does not permit the District Director discretion to "determine whether a reward will be paid and its amount."  *Compare* Def. Mot. Ex. A (stating the PARL's "*will* pay" language) (emphasis added) *with Cambridge*, 2007 WL 1888888, at *2 (referencing the relevant form that authorized the director to determine whether to pay a reward).

Furthermore, contrary to Defendant's assertion, Plaintiff did not waive his right to post-decision proceeds by signing a release contained in the PARL.  Although the PARL contained a provision waiving Plaintiff's right to challenge his preliminary award, the PARL is silent about Doe's right to bring a challenge regarding post-decision proceeds.  In addition, it is well established that finality provisions in settlements do not bar claims for breach of the settlement itself.  *LaBatte v. United States*, 899 F.3d 1373, 1378 (Fed. Cir. 2018).  Here, Mr. Doe alleges that he "was entitled to receive 15% of all 'post-decision proceeds,' or a fixed amount of $████████ (i.e., 15 percent of $████████) . . . ."  Compl. ¶ 8.  Plaintiff further alleges that the Government collected $████████ in ████████, and that he is entitled to 15 percent of that collection, or $████████. Compl. ¶¶ 120-21, 135, 142-43, 149.  Because, Plaintiff alleges that Defendant breached the PARL

through instances occurring *after* the execution of the PARL, Mr. Doe's claims relating to post-decision proceeds are not barred by the PARL's waiver provisions.

III.   <u>Ripeness</u>

Finally, Defendant contends that Plaintiff's claims are not ripe pursuant to Treasury Regulation Section 301.7623-4, which specifies that "[p]ayment of an award will be made as promptly as the circumstances permit, but not until there has been a final determination . . . ." *See* Def. Reply at 2, 14-15 (quoting 26 C.F.R § 301.7623-4(d)); *see also* Def. Mot. at 22.   That argument is without merit.

The PARL is governed by 26 C.F.R. § 301.7623-3(b)(6), which permits the IRS's Whistleblower Office to pay whistleblowers percentage awards from collected proceeds prior to a final determination of tax.   If the Whistleblower Office enters into an agreement with a whistleblower for early payment, such payment will be made "as promptly as circumstances permit."   26 C.F.R. § 301.7623-3(b)(6).   Here, the IRS indicated that it would pay Plaintiff a preliminary award based on "collected proceeds" as well as fifteen percent of all "[p]ost-decision proceeds . . . that may be collected . . . ."   Def. Mot. Ex. A at 5.   The PARL indicated that Defendant expected to make a final determination of tax by ███████ .   *Id.*   As discussed earlier, this expected date did not create an obligation on the part of the government to make a final determination by this date but it does indicate that  Plaintiff would become entitled to his percentage award of all post-decision proceeds collected within a reasonable time after a final determination of tax was made.   Moreover, 26 C.F.R. § 301.7623-4 specifies that "[p]ayment of an award will be made as promptly as the circumstances permit, but not until there has been a final determination of tax with respect to the action(s) . . . ."   Defendant is therefore correct that, under the PARL and its governing regulations, Defendant did not have an obligation to pay Plaintiff 15 percent of collected proceeds

14

until after there is a "final determination of tax."  26 C.F.R. § 301.7623-4; *see also Norfolk &*
*Western Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S. 117, 130 (1991) ("Laws which subsist
at the time and place of the making of a contract, and where it is to be performed, enter into and
form a part of it, as fully as if they had been expressly referred to or incorporated in its terms.")
(quoting *Farmers & Merchants' Bank of Monroe N.C. v. Fed. Reserve Bank of Richmond Va.*, 262
U.S. 649, 660 (1923)).

But the inquiry does not end there in this case.  Here, Plaintiff has alleged that Defendant
made a blanket statement that Defendant would not abide by the PARL.  Compl. ¶ 123.  Further,
Plaintiff alleges that Defendant has collected "post-decision proceeds" to be applied to final
judgments the IRS obtained as a result of Plaintiff's work as a confidential informant, and the ███
PARL contemplates that post-decision proceeds will be paid "if post-decision proceeds are
collected."  Compl. ¶¶ 120-21.  Def. Mot. Ex. A at 3.  Assuming these allegations are true for
purposes of this motion and viewing this allegation in the light most favorable to the Plaintiff, as
this Court must, Defendant's statement would violate Defendant's obligation to pay Plaintiff *any*
proceeds collected after the execution of the PARL.  While these actions would normally not
constitute breach until after a final determination of tax is made, under the doctrine of anticipatory
repudiation, Plaintiff need not wait for payment to become due to vindicate its rights under the
contract.  *Franconia Assocs. v. United States*, 536 U.S. 129, 143 (2002) (quoting 4 A. Corbin,
Contracts § 959, p. 855 (1951)).[12]  Instead, Plaintiff is entitled to treat Defendant's statements as

---

[12] In its reply brief, Defendant states:

> As for when a final determination of tax will occur, that is unclear as it is up to the
> agency to pursue collections, which can take years.  Generally, the statute of
> limitations for IRS collections is 10 years, but the agency refers the collection cases
> to the Department of Justice for judgments.  After that, the period of limitations is
> governed by the limitations on the judgment 26 U.S.C. § 6502(a).  Effectively,
> Federal judgments are good for 20 years, and they can be renewed once.  *See*

a present breach even before performance is due under the contract.  *See id.*  at 143 (quoting *Roehm v. Horst*, 178 U.S. 1, 13) ("[Repudiation] give[s] the promisee the right of electing either to . . . wait till the time for [promisor's] performance has arrived, or to act upon the renunciation and treat it as a final assertion by the promisor that he is no longer bound by the contract." (internal citation and quotations omitted)).

Therefore, to the extent that the filing of this suit precedes Defendant's duty to perform under the PARL, these alleged statements plausibly constitute an anticipatory repudiation which is ripe for judicial review.  *Barlow & Haun, Inc. v. United States*, 118 Fed. Cl. 597, 615 (2014), *aff'd*, 805 F.3d 1049 (Fed. Cir. 2015) (finding Plaintiff's claims ripe where Plaintiff demonstrated it treated repudiation as breach by filing suit prior to date of performance).

IV.   Breach of Good Faith and Fair Dealing

Finally, Plaintiff alleges that Defendant violated the implied covenant of good faith and fair dealing by: (1) "refusing to pay 15% of other taxes, interest, and penalties Plaintiff has learned were actually collected by the Defendant . . . ;" (2) "refusing to make a 'final determination;'" [(3)] "refusing to respond to Plaintiff's repeated requests for reassurances in ███████████████ that it was going to adhere to the agreement . . . ;" (4) "by further unspecified action and inaction, including a failure to communicate with Plaintiff."  Compl. ¶ 174.

Defendant argues that Plaintiff fails to state a plausible claim for breach of the implied covenant of good faith and fair dealing because the IRS is not obligated to collect future proceeds

---

28 USC § 3201.  So, once the Department of Justice gets a judgment, the period of limitations could be upwards of 50 years from the assessment date; and it gets even longer because the period can be tolled during bankruptcy, for example.

Def. Reply at 15 n.4.

or communicate with Plaintiff regarding its collection of proceeds.  *See* Def. Mot. at 22-23; Def. Reply at 8-9.

"Every contract, including one with the federal government, imposes upon each party an implied duty of good faith and fair dealing in its performance and enforcement."  *Dobyns v. United States*, 915 F.3d 733, 739 (Fed. Cir. 2019) (citation omitted).  "A party breaches the contract when it fails to abide by this implied duty, which includes the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract."  *Id.* (citation and internal quotation marks omitted).  However, "[t]he implied duty of good faith and fair dealing cannot expand a party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions."  *Id*. (quoting *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 831 (Fed. Cir. 2010)).  "[A]n act will not be found to violate the duty . . . if such a finding would be at odds with the terms of the original bargain, whether by altering the contract's discernible allocation of risks and benefits or by conflicting with a contract provision."  *Metcalf Const. Co. v. United States*, 742 F.3d 984, 991 (Fed. Cir. 2014).

Because a party's duty of good faith and fair dealing pertains to a party's contractual duties, the Court analyzes the breach of good faith and dealing claim only with respect to the PARL.  To the extent Plaintiff's breach of good faith and fair dealing arguments relate to actions that precede the PARL or extend to amounts not collected, the claims must be dismissed.  However, Defendant has an obligation to act in good faith as to the amounts already collected and subject to the PARL.  Therefore, Plaintiff has stated a plausible claim for a breach of good faith and fair dealing only to the extent that its claims related to post-decision proceeds which have been collected.

Many of Plaintiff's allegations that Defendant breached its duty of good faith and fair dealing seem to involve allegations of Government action or inaction that pre-date the execution of the PARL.  *See e.g.*, Compl. ¶¶ 152-155 (alleging the Government had a duty to reasonably respond to Plaintiff's ▇▇▇▇▇▇▇ inquiries regarding his whistleblower claims).  To the extent that Plaintiff's allegations pre-date the PARL, Plaintiff has clearly waived his right to judicially challenge the IRS's preliminary award determination that Plaintiff received by the terms the PARL itself.  *See* Def. Mot. Ex. A at 3, 7.  The PARL's signature page clearly states, in relevant part, "[t]o the extent payment is received by the undersigned consistent with this preliminary award recommendation, I waive all my administrative and judicial appeal rights with respect to the award decision . . . ."  *Id.* at 7.  Such a release generally bars claims based upon events occurring prior to the date of the release.  *See Augustine Med., Inc. v. Progressive Dynamics*, 194 F.3d 1367, 1373 (Fed. Cir. 1999) (citing *Johnson, Drake & Piper, Inc. v. United States*, 531 F.2d 1037, 1047 (Cl. Ct. 1976)).  Accordingly, to the extent Plaintiff's claims relate to events that occurred prior to the execution of the PARL, those claims must be dismissed because Mr. Doe expressly waived them.[13]

Next, Plaintiff alleges that the Government breached its duty of good faith and fair dealing by refusing to make a final determination by ▇▇▇▇▇▇ .  *See* Compl. ¶ 163.  This allegation does not state a plausible claim for relief for several reasons.  Under 26 C.F.R. § 301.7623-4(d), "a final determination of tax means that the proceeds resulting from the action(s) subject to the award determination have been collected and either the statutory period for filing a claim for refund has expired or the taxpayer(s) subject to the action(s) and the IRS have agreed with finality to the tax

---

[13] This includes the pre-PARL activity alleged in paragraphs 152 through 160 of the Complaint. *See* Compl. ¶ 152 (discussing alleged obligation to inform Plaintiff of the IRS's ▇▇▇ collection), ¶¶ 154-55 (discussing alleged obligation to respond to Plaintiff's ▇▇▇ inquiry regarding IRS collections), ¶¶ 156-60 (discussing alleged impropriety of Defendant's efforts to coerce Plaintiff to agree to an "early payout" award).

or other liabilities for the period(s) at issue and the taxpayer(s) have waived the right to file a claim for refund."  Based on this definition, the IRS's ability to reach a final determination of tax is subject to a number of contingencies beyond the control of the Government.  Accordingly, the Government clearly indicated that there was no guarantee that a final determination would be made by ███████.  Instead, the PARL qualifies that ███████ is the "Expected Final Determination of Tax" date and addresses only the "possibility" that additional, post-decision proceeds "may be collected."  *See* Compl. ¶ 115; Def. Mot. Ex. A at 5, ¶¶ 6-7.  Thus, although the PARL guarantees that Plaintiff will receive 15 percent of the Government's recovery from Mr. Doe's former employer, if collected, the PARL makes no guarantee that the Government will collect any post-decision proceeds.

However, at this stage in the litigation, to the extent Plaintiff's allegations relate to amounts that the Government already collected and are post-decision proceeds, Plaintiff has pleaded a plausible claim for relief.  *See* Compl. ¶¶ 153, 161, 163, 172, 174-77.  As noted, Defendant is obligated to pay the Plaintiff post-decision proceeds which have been collected.  *See* Def. Mot. Ex. A at 3.

Here, Plaintiff alleged that Defendant has refused to keep Plaintiff apprised of post-decision proceeds amounts that Defendant has collected, and that Defendant has expressly communicated its intent not to abide by the terms of the PARL.  Compl. ¶ 174.  Good faith dictates that a party to a contract has a duty to cooperate so as not to destroy the benefit of the bargain.  *See Agility Pub. Warehousing Co. KSCP v. Mattis*, 852 F.3d 1370, 1384 (Fed. Cir. 2017) (citations omitted).  Defendant's duty to reasonably inform Plaintiff of Defendant's collections and timely pay the Plaintiff is concomitant with Defendant's duty to pay under the PARL.

Accordingly, Plaintiff has stated a plausible claim that Defendant violated its implied duty of good faith and fair dealing as it relates to "post-decision proceeds." *See* Pl. Resp. at 12 (citing Compl. ¶¶ 123, 163).[14]

CONCLUSION

Defendant's Motion to Dismiss (ECF No. 17) is **GRANTED in part** and **DENIED in part**. Consistent with this Memorandum and Order, Count I of the complaint is dismissed in its entirety. The Court denies Defendant's Motion to Dismiss with respect to Count II of the complaint. Count III of the complaint is dismissed except as to the allegations therein that relate to post-decision proceeds already collected.

Within fourteen (14) days of this Memorandum and Order, the parties shall **CONFER** and **FILE** a **NOTICE**, attaching a proposed public version of this Memorandum and Order, with any protected information redacted in accordance with this Court's Protective Order. *See* ECF No. 14.

---

[14] The Court notes that if Plaintiff were to ultimately succeed on his claim that Defendant materially breached the express contract, it is likely that the contract would terminate. *Indiana Michigan Power Co. v. United States*, 422 F.3d 1369, 176 (Fed. Cir. 2005) ("[W]here a plaintiff commences an action for total breach, 'he is obliged in order to avoid splitting, to claim all his damages with respect to the contract, prospective as well as past, and judgment in the action precludes any further action by the plaintiff for damages arising from the contract.'" (quoting Restatement (Second) of Judgment § 26 cmt. g)). Furthermore, Plaintiff's requested relief, if he were to succeed, would be statutorily limited to a percentage award based only on proceeds that the Defendant has already collected. *See* 26 U.S.C. § 7623 ("[I]n cases where such expenses are not otherwise provided for by law[, a]ny amount payable under the preceding sentence shall be paid from the proceeds of amounts . . . collected by reason of the information provided, and any amount so collected shall be available for such payments."). Based on the information before the Court at this time, it does not appear that Plaintiff would receive any additional relief from his claim for breach of good faith and fair dealing that he would not otherwise receive from his breach of contract claim. However, at this stage, Plaintiff is entitled to pursue alternative theories of relief. *See Entergy Louisiana, L.L.C. v. United States*, 133 Fed. Cl. 258, 262 (2017) (finding that "[b]ecause Plaintiff's claim of breach of the covenant of good faith and fair dealing is separate and distinct from its claim of breach of contract and constitutes a separate cause of action, Plaintiff is entitled to plead both claims). Therefore, this Court declines to dismiss Plaintiff's good faith and fair dealing claim as duplicative at this stage in the proceedings.

Additionally, within fourteen (14) days of this Memorandum and Order, the parties shall **FILE** a joint status report, including a joint proposal for further proceedings.


IT IS SO ORDERED.


                                                  s/Eleni M. Roumel
                                                 ELENI M. ROUMEL
                                                       Judge

Dated: April 15, 2021,
Washington, D.C.